IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNILOC 2017 LLC

        Plaintiff,

v.

MOTOROLA MOBILITY, LLC,

        Defendant.

Civil Action No. 18-cv-01841-RGA

CONSOLIDATED

MEMORANDUM OPINION

Sean T. O'Kelly, Thomas H. Kramer, O'KELLY ERNST, LLC, Wilmington, DE; Paul J. Hayes, Kevin Gannon, James J. Foster, Aaron Jacobs (argued), PRINCE LOBEL TYE LLP, Boston, MA;

    Attorneys for Plaintiff UNILOC 2017 LLC

Philip A. Rovner, Jonathan A. Choa, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Martin Bader (argued), Nam Kim, Michael Heins, SHEPPARD, MULLIN, RICHTER & HAMPTON LLP, San Diego, CA; Lai L. Yip (argued), Yasamin Parsafar, SHEPPARD, MULLIN, RICHTER & HAMPTON LLP, San Francisco, CA; Trevor J. Quist (argued), SHEPPARD, MULLIN, RICHTER & HAMPTON LLP, Palo Alto, CA;

    Attorneys for Defendant MOTOROLA MOBILITY, LLC

January 17, 2020


**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is the issue of claim construction of multiple terms in U.S. Patent No. 6,836,654 ("the '654 patent"). The Court has considered the Parties' Joint Claim Construction Brief. (D.I. 67). The Court issued proposed constructions (D.I. 70) prior to hearing oral argument (D.I. 71).

## I. BACKGROUND

Plaintiff Uniloc filed the instant action on November 20, 2018, alleging infringement of the '654 patent by Defendant Motorola. (D.I. 1). The '654 patent claims a mobile radiotelephony device that offers anti-theft protection. (D.I. 67 at 1).

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324) (alteration in original). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (citations and internal quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (internal quotation marks omitted). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would

exclude the inventor's device is rarely the correct interpretation." *Osram GMBH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (citation and internal quotation marks omitted).

### III. CONSTRUCTION OF DISPUTED TERMS

1. "linked user identification module" (all claims)

    a. *Plaintiff's proposed construction*: ordinary meaning. Alternatively, "a user identification module linked to the device"

    b. *Defendant's proposed construction*: "a user identification module whose data has been read by, and stored on, the mobile radio telephony device for the purpose of blocking the normal operation of the device with another user identification module"

    c. *Court's construction*: "an authorized user identification module that permits the normal operation of the device"

My proposed constructions included the construction of "linked user identification module" to mean "an authorized user identification module that permits the normal operation of the device." (D.I. 70 at 1). At oral argument, Plaintiff agreed to this construction. (D.I. 71 at 7:4-7). Defendant argued that the construction should include language stating that the linked user identification module is the "only one" that will permit the normal operation of the device. (*Id.* at 12:14-18). Plaintiff countered that not all embodiments require that the linked user identification module is the only one able to permit the normal operation of the device. (*Id.* at 22:12-19). I agree with Plaintiff. There is nothing in the patent that requires that only one linked user identification module will permit the normal operation of the device for all embodiments. Thus, the patent is not limited to only one linked user identification module for all embodiments. I therefore construe "linked user identification module" to mean "an authorized user identification module that permits the normal operation of the device."

3

2.  "blocking means for preventing a normal operation of the mobile radiotelephony device" (claims 1-9)

   a.  *Plaintiff's proposed construction*:
       *Function:* "preventing a normal operation of the mobile radiotelephony device"
       *Structure:* "a microprocessor assembly capable of entering any of the three disclosed blocking states to prevent a normal operation of the device, and equivalents thereof"

   b.  *Defendant's proposed construction*:
       *Function:* "preventing a normal operation of the mobile radiotelephony device"
       *Structure:* Indefinite under 35 U.S.C. § 112. Or, in the alternative: "a microprocessor (e.g., $\mu P$ 22) programmed to execute the algorithm corresponding to the second blocking state indicated in box K11, which prevents normal operation of the radiotelephony device by preventing one or more calling functions of the mobile radiotelephony device."

   c.  *Court's construction*:
       *Function:* "preventing a normal operation of the mobile radiotelephony device"
       *Structure*: "the hardware programmed to (i) disconnect from the network if an identification module that is not linked to the device is placed inside the device (col. 3:14-20); (ii) prevent all outgoing calls, except possibly emergency calls, if the device has remained in a state of availability longer than a predetermined threshold of time (col. 3:33-46); and (iii) prevent all calls if an incorrect deblocking code is entered above a threshold amount (col. 3:52-60)"[1]

In the Joint Claim Construction Brief, the parties agreed to the function of this term, which is "preventing a normal operation of the mobile radiotelephony device." (D.I. 67 at 31). At oral argument, the parties agreed to my proposed structure. (D.I. 71 at 28:21-22, 29:24-30:1). Thus, the structure is "the hardware programmed to (i) disconnect from the network if an identification module that is not linked to the device is placed inside the device (col. 3:14-20); (ii) prevent all outgoing calls, except possibly emergency calls, if the device has remained in a state of availability longer than a predetermined threshold of time (col. 3:33-46); and (iii) prevent all calls if an incorrect deblocking code is entered above a threshold amount (col. 3:52-60)."

---

[1] Under 35 U.S.C. § 112 ¶ 6, means-plus-function claims are "construed to cover the corresponding structure . . . described in the specification and equivalents thereof." My constructions will not recite "and equivalents thereof" but the jury will be instructed to consider equivalents pursuant to § 112 ¶ 6.

4

3. "timing means for activating the blocking means in response to the mobile radiotelephony device being inactive during the normal operation of the mobile radiotelephony device for a defined period of time subsequent to a mounting of a linked user identification module inside the mobile radiotelephony device" (claims 1-9)

    a. *Plaintiff's proposed construction*:
    *Function:* "activating the blocking means in response to the mobile radiotelephony device being inactive during the normal operation of the mobile radiotelephony device for a predefined period of time subsequent to the mounting of a linked user identification module inside the mobile radiotelephony device"
    *Structure:* "the microprocessor assembly 20, which controls the device and is connected to all other components (and therefore measures inactivity). Since timing is a well-known function of a microprocessor, and the microprocessor is the component performing the function of the blocking means, it can activate itself, and no algorithm is necessary."

    b. *Defendant's proposed construction*:
    *Function:* "activating the blocking means in response to the mobile radiotelephony device being inactive during the normal operation of the mobile radiotelephony device for a predefined period of time subsequent to the mounting of a linked user identification module inside the mobile radiotelephony device"
    *Structure:* Indefinite under 35 U.S.C. § 112. Or, in the alternative: "a microprocessor (e.g., $\mu$P 22) programmed to execute an algorithm involving: if the identification module that is placed inside the device is linked to the device (arrow Y4), determining whether the device has remained in the state of availability for a certain period of time T of the order of several minutes, for example (box K10), then, if this is the case (arrow Y10), the device passes on to a second blocking state indicated in box K11."

    c. *Court's construction*:
    *Function:* "activating the blocking means in response to the mobile radiotelephony device being inactive during the normal operation of the mobile radiotelephony device for a predefined period of time subsequent to the mounting of a linked user identification module inside the mobile radiotelephony device"
    *Structure*: "the hardware programmed to determine whether the device has remained in the state of availability for a designated period of time, and if so, to block the device and require a deblocking code to restore normal functioning (col. 3:31-43)"

Both parties agree this term should be governed by 35 U.S.C. § 112 ¶ 6. (D.I. 67 at 46). The parties also agree that the function is "activating the blocking means in response to the mobile radiotelephony device being inactive during the normal operation of the mobile

radiotelephony device for a predefined period of time subsequent to the mounting of a linked user identification module inside the mobile radiotelephony device." (*Id.*).

At oral argument, Plaintiff agreed to my proposed construction that the structure is "the hardware programmed to determine whether the device has remained in the state of availability for a designated period of time, and if so, to block the device and require a deblocking code to restore normal functioning (col. 3:31-43)." (D.I. 71 at 30:14-17).

Defendant argues that the claim is indefinite because the claim requires that the device be "inactive during the normal operation" of the device and there is no corresponding algorithm in the patent. (D.I. 67 at 48). Defendant asserts that it is impossible for the device to be "inactive during the normal operation" as it would require "inactivity during activity." (*Id.* at 49). Further, Defendant contends that the identified structure centers on a "state of availability," which cannot be the same as "inactive during the normal operation." (*Id.* at 53-54).

I disagree with Defendant's reasoning. The phrase "state of availability" implies that the device is able to be used but is not in use at that time. Similarly, "inactive during the normal operation" implies that the device is not in use at that time but is operating normally and thus is able to be used. The algorithm at column 3, lines 31 to 43 of the '654 patent therefore corresponds to the claim term. Accordingly, I construe the structure to be "the hardware programmed to determine whether the device has remained in the state of availability for a designated period of time, and if so, to block the device and require a deblocking code to restore normal functioning (col. 3:31-43)."

4. "deblocking means for permitting the normal operation of the mobile radiotelephony device in response to a supply of a deblocking code to the mobile radiotelephony device subsequent to the mounting of the linked user identification module inside the mobile radiotelephony device and subsequent to the defined period of time" (claims 1-9)

6

a. *Plaintiff's proposed construction*:
*Function:* "permitting the normal operation of the mobile radiotelephony device"
*Structure:* "a microprocessor assembly, optionally coupled with a screen and man-machine interface, capable of leaving either the first or second disclosed blocking states to permit a normal operation of the device, and equivalents thereof"

b. *Defendant's proposed construction*:
*Function:* "permitting the normal operation of the mobile radiotelephony device in response to a supply of a deblocking code to the mobile radiotelephony device subsequent to a mounting of a linked user identification module inside the mobile radiotelephony device"
*Structure:* Indefinite under 35 U.S.C. § 112. Or, in the alternative: "a microprocessor (e.g., $\mu P$ 22) programmed to execute an algorithm involving: upon the deblocking code being supplied, returning the device to the normal operating mode (e.g., if the deblocking code taken by the user is recognized (arrow Y11), the device goes back to the state of availability indicated in box K1)."

c. *Court's construction*:
*Function*: "permitting the normal operation of the mobile radiotelephony device in response to a supply of a deblocking code to the mobile radiotelephony device subsequent to a mounting of a linked user identification module inside the mobile radiotelephony device and subsequent to the defined period of time"
*Structure*: "the hardware programmed to invite the user to supply a deblocking code and allow the device to return to the state of availability if the code entered is recognized (col. 3:48-52)"

Plaintiff argues that, logically, the function of "deblocking means" should be the inverse of "blocking means," and thus should be construed as "permitting the normal operation of the mobile radiotelephony device." (D.I. 67 at 55). I disagree. Plaintiff's proposal is only a portion of the claim language and the proposal omits relevant claim limitations. "The function of a 'means plus function' claim must be construed to include the limitations contained in the claim language" and may not be "improperly broadened by ignoring the clear limitations contained in the claim language." *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 249 F.3d 1314, 1324 (Fed. Cir. 2001). Plaintiff's proposed function thus invalidly omits relevant limitations in the claim language.

7

Defendant agreed to my proposed function (D.I. 71 at 50:3-11) but asked that I include the remainder of the language from the claim that it had inadvertently left out of its proposal (*Id.* at 48:5-7). I have. The function is "permitting the normal operation of the mobile radiotelephony device in response to a supply of a deblocking code to the mobile radiotelephony device subsequent to a mounting of a linked user identification module inside the mobile radiotelephony device and subsequent to the defined period of time."

At oral argument, Plaintiff stated that if I were to construe the function to contain the claim limitations it omitted, then it would agree to my proposed structure. (*Id.* at 47:24-48:2). Defendant agreed to my proposed structure as well, emphasizing that this term is limited to the second blocking state. (*Id.* at 50:12-19). It is. The structure is thus "the hardware programmed to invite the user to supply a deblocking code and allow the device to return to the state of availability if the code entered is recognized (col. 3:48-52)."

5. "locking means for facilitating an activation of the block means by the timing means" (claim 4)

    a. *Plaintiff's proposed construction*:
       *Function:* "facilitating an activation of the blocking means"
       *Structure:* "the microprocessor assembly 20, the screen 8 with keypad 9, via the man-machine interface 30, and the card reader 39, which reads the identification module"

    b. *Defendant's proposed construction*:
       *Function:* "facilitating an activation of the blocking means by the timing means"
       *Structure:* indefinite under 35 U.S.C. § 112

    c. *Court's construction*: indefinite
       *Function:* "facilitating an activation of the blocking means by the timing means"
       *Structure:* indefinite under 35 U.S.C. § 112 ¶ 6

At oral argument, Plaintiff agreed to Defendant's proposed function: "facilitating an activation of the blocking means by the timing means." (D.I. 71 at 51:21-23). Plaintiff's proposed mechanical structure, however, is insufficient because the claimed function requires an

8

algorithm that is not a general function of a microprocessor. *See In re Katz*, 639 F.3d 1303, 1316 (Fed. Cir. 2011). Plaintiff argued that the specification has algorithmic structure from column 2, line 63 to column 3, line 13 of the '654 patent. (D.I. 71 at 53:14-15). I do not think this structure is valid because the "locking" referred to in that section has to do with triggering the link between the device and the user identification module, not "facilitating an activation of the blocking means by the timing means." Therefore, it is not sufficient structure for this function.

The '654 patent fails to disclose any corresponding structure to "facilitating an activation of the blocking means by the timing means." The term "locking means for facilitating an activation of the block means by the timing means" is thus indefinite under 35 U.S.C § 112 ¶ 6.

6. "connecting means for establishing a link between the mobile radiotelephony device and the linked user identification module" (claim 5)

    a. *Plaintiff's proposed construction*:
       *Function:* "establishing a link between the mobile radiotelephony device and the linked user identification module"
       *Structure:* "a microprocessor coupled to a card reader"

    b. *Defendant's proposed construction*:
       *Function:* "establishing a link between the mobile radiotelephony device and the linked user identification module"
       *Structure:* "the combination of hardware and algorithms involved in the reading of data from the identification module, and storage of such data in memory of the radiotelephony device. Such hardware components include a microprocessor (e.g., μP 22) for reading data on the identification module, and memory for storing the data that gets read (e.g., RAM 24 and/or ROM 26), and the related algorithm for causing the microprocessor to read data on a mounted identification module, and to cause the storage of such data in the memory.

    c. *Court's construction*:
       *Function:* "establishing a link between the mobile radiotelephony device and the linked user identification module"
       *Structure:* "the hardware involved in the reading of data from the identification module, and storage of such data in the memory of the radiotelephony device"

The parties agree that this term is governed by 35 U.S.C. § 112 ¶ 6 and that the function is "establishing a link between the mobile radiotelephony device and the linked user

9

identification module." (D.I. 67 at 66). At oral argument, Plaintiff accepted my proposed construction. (D.I. 71 at 59:23-24). For clarification, Plaintiff suggested that I specify that the hardware involved is identified in column 1, line 66 through column 2, line 10 and in column 2, line 66 through column 3, line 6 of the '654 patent. (*Id.* at 61:5-11). These lines do describe hardware contemplated by the patent to be involved in the "reading of data from the identification module, and storage of such data in the memory of the radiotelephony device." The proposed construction, however, provides sufficient structure on its own. Therefore, it is not necessary to add these patent citations to the structure.

Similarly, for clarification, Defendant asked me to include language in the structure to specify that it is the hardware that is "used to establish the link" between the device and the user identification module. (*Id.* at 63:9-12). Defendant contends that otherwise my proposed construction could refer to any hardware that reads and stores any data. (*Id.* at 63:12-15). I disagree. My proposed construction limits the hardware to that which reads data from the user identification module and stores that data on the device for the purpose of establishing a link between the mobile radiotelephony device and the linked user identification module. (*See* D.I. 70 at 2). The structure as proposed therefore limits the hardware to that used to link the user identification module to the device.

It is also not necessary to include algorithmic structure in the construction as the reading and storage of information in this circumstance does not require an algorithm. I thus construe the structure to be "the hardware involved in the reading of data from the identification module, and storage of such data in the memory of the radiotelephony device."

7.     "inactivity of the mobile radiotelephony device during a normal operation of the mobile radiotelephony device" (claims 10-14, 17, 18)

    "inactive during the normal operation of the mobile radiotelephony device" (claim 1)

10

"in response to the verification of the linked user identification module and in response to the detection of the period of inactivity of the mobile radiotelephony device" (claims 10-14, 17, 18)

"in response to the verification of the linked user identification module and in response to a supply of deblocking code to the mobile radiotelephony device subsequent to the detection of the period of inactivity of the mobile radiotelephony device" (claims 11, 18)

a. *Plaintiff's proposed construction*: ordinary meaning

b. *Defendant's proposed construction*: indefinite under 35 U.S.C. § 112 ¶ 2

c. *Court's construction*: ordinary meaning

Defendant's argument for these terms is essentially the same as its argument for the "timing means" term above. Defendant argues that these limitations are indefinite because they use the terms "inactivity," "inactive," "inactivity . . . during a normal operation," and/or "inactive during the normal operation." (D.I. 67 at 70, 72). Defendant asserts that these "inactivity" terms are not defined in the patent and do not inform those skilled in the art of the scope of the invention. (*Id.*). As discussed above, I disagree with Defendant's reasoning on the "inactivity" terms and understand the meaning of these terms to be clear. Thus, these terms have their ordinary meaning.

## IV. CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion suitable for submission to the jury.

11